IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUSAN C. EUDY,                    )
                                  )
            Plaintiff,            )
                                  )
        v.                        )        1:07CV00606
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security,                         )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Susan C. Eudy, brought this action pursuant to
Sections 205(g) and 1631(c)(3) of the Social Security Act, as
amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial
review of a final decision of the Commissioner of Social Security
denying her claim for Disability Insurance Benefits under Title II
of the Social Security Act (the "Act").  The parties have filed
cross-motions for judgment, and the administrative record has been
certified to the Court for review.

### PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance
Benefits ("DIB") on September 30, 2003 (protective filing date,
August 15, 2003), alleging a disability onset date of February 29,

2000.  (Tr. 60.)[1]  The application was denied initially and upon reconsideration.  (Tr. 40, 36.)  Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. 32.) Present at the hearing, held on August 21, 2006, were Plaintiff, her mother, her attorney, and a vocational expert ("VE").  (Tr. 16, 19.)  The ALJ determined that Plaintiff was not disabled within the meaning of the Act.  (Tr. 21.)  On June 19, 2007, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.  (Tr. 5.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 29, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> 3.  The claimant has the following severe impairments: right hip sprain with femoral neuropathy (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work with lifting limited to 25 pounds, no prolonged bending,

---

[1]  Transcript citations refer to the administrative record.

-2-

stooping, pushing/pulling, no standing/walking over 30 minutes and no ladders, with a sit/stand option, and no working on or driving power moving equipment.

(Tr. 18-19.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff was unable to perform her past relevant work as a forklift operator. (Tr. 20.) He found that transferability of job skills was not an issue in the case, as Plaintiff's prior work was unskilled, but added that Plaintiff has a high school education and can communicate in English. (Id.) Finally, because Plaintiff, born on December 10, 1959, was 46 years old at the time of the ALJ's decision, the ALJ noted that she was regulatorily defined as a "younger person." (See id. (citing 20 C.F.R. § 404.1563)). Based on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c) and 404.1566)). Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from February 29, 2000, through the date of his decision on September 12, 2006. (Tr. 21.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

-3-

of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

-4-

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age,

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Social Security Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

-6-

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some

(continued...)

-7-

## Assignments of Error

In the present case, the ALJ found that Plaintiff, who was not working, met her burden at step one of the sequential evaluation process ("SEP"). At step two, he further determined that Plaintiff suffered from only one severe impairment, right hip sprain with femoral neuropathy. Although the ALJ found at the third step that this impairment limited Plaintiff to light work with certain restrictions, he ultimately concluded at step five, based on the VE's testimony, that Plaintiff could perform other jobs available in the community and was therefore not disabled.

Plaintiff argues, however, that substantial evidence fails to support the Commissioner's findings at steps two, three, and five and/or that the ALJ incorrectly applied the law at theses steps. Specifically, she contends that the ALJ failed to (1) accord adequate weight to the opinion of Plaintiff's treating physician, (2) fully develop the record, (3) pose a proper hypothetical question to the vocational expert, (4) find Plaintiff's depression, back pain, and obesity to be severe impairments, (5) evaluate Plaintiff's pain according to Social Security Ruling ("SSR") 96-7p, (6) consider limitations imposed on Plaintiff by all of Plaintiff's impairments, and (7) consider the side effects of Plaintiff's

---

[5] (...continued)
short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

medications. Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. The Court, therefore, will address each of Plaintiff's arguments.

## 1. Medical Opinions

Plaintiff first claims that the ALJ incorrectly assessed her RFC at step three of the SEP when he relied on certain portions of her treating physician's opinion and her functional capacities evaluation ("FCE") without explaining why he rejected other parts. In doing so, Plaintiff argues, the ALJ failed to give adequate weight to the most compelling medical evidence in her case. Plaintiff appears to base her argument primarily on the ALJ's failure to track the language of the treating physician's opinion and the FCE in the decision denying benefits. The question remains whether, despite this alleged failing, the record demonstrates that the ALJ thoroughly and accurately reviewed Plaintiff's functional limitations in formulating his decision that Plaintiff could perform other work. See Hines, 453 F.3d at 562-63 ("RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."); Morgan v. Barnhart, 142 Fed. Appx. 716, 723 & n.6 (4th Cir. 2005)(adopting harmless error test in connection with RFC determinations and citing Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004), for the proposition that "reversal is not

-9-

required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached").

In this regard, Plaintiff correctly notes that differences exist between her functional capacity as summarized in the ALJ's opinion and as summarized (1) by her treating physician, Dr. Bohannon Mason, and (2) by Industrial Health Services in her FCE. As stated above, the ALJ wrote that Plaintiff retained

>the residual functional capacity to perform a range of light work with lifting limited to 25 pounds, no prolonged bending, stooping, pushing/pulling, no standing/walking over 30 minutes and no ladders, with a sit/stand option, and no working on or driving power moving equipment.

(Tr. 19.) In contrast, Dr. Mason's report indicates that Plaintiff could return to work with the following restrictions:

>no lifting greater than 25 pounds, no prolonged bending, stooping, squatting or kneeling, no pushing or pulling, no working on or driving power equipment, no standing more than 15 minutes per hour with the understanding that the patient would need to stand and change positions frequently and during the course of any 1 hour. Additionally, she should not be exposed to ladder climbing or stair climbing on the job.

(Tr. 169.)

A comparison of these restrictions clearly shows that the ALJ's summary includes a less stringent and specific description of Plaintiff's standing requirements as well as an inaccurate indication that some degree of pushing or pulling is acceptable. However, in arguing that these differences materially affected the assessment of her RFC, Plaintiff ignores Dr. Mason's ultimate

-10-

conclusion that she is, in fact, physically capable of returning to light work. Moreover, the VE specifically based her assessment that Plaintiff could work as an office helper, cashier, or parking lot attendant on the restrictions as stated by Dr. Mason, not on those summarized later by the ALJ. (See Tr. 311-13.) The Court cannot conclude, given both these facts and the minor nature of the discrepancies in question, that the ALJ failed to accord significant weight to Dr. Mason's opinion in its entirety or that the ALJ's conclusions were inconsistent with substantial evidence.

Plaintiff's challenge regarding the difference between the ALJ's summary and the FCE summary similarly fails. Because the FCE summary indicates that Plaintiff has a low biomechanical tolerance for sustained activity and that she requires frequent postural changes and rest periods (see Tr. 103), Plaintiff argues that she cannot perform work-related activities on a sustained basis. Again, however, Plaintiff fails to acknowledge that the FCE itself submits that she can perform light, and even entry level medium, work. (Id.)[6] Further, the only notable difference between the FCE and the ALJ's summary is the length of time Plaintiff can walk before resting. Given the absence of any indication that the light jobs described by the VE would require walking, let alone walking for more than ten minutes at a time, the Court cannot conclude that

---

[6] Notably, the ALJ stated that "the State Agency assessments of physical residual capacity [were] somewhat excessive at medium and [should be] accorded limited weight." (Tr. 20.) Thus, in at least one pivotal aspect, the ALJ's RFC assessment is more favorable to Plaintiff than the underlying evidence.

-11-

a discrepancy on this point affected the disability determination in any way.

In sum, Plaintiff has at most identified technical errors that had no impact on the disability determination. <u>See Morgan</u>, 142 Fed. Appx. at 723 & n.6; <u>Miles v. Astrue</u>, No. 8:07-3164-RBH, 2009 WL 890651, at * 14 (D.S.C. Mar. 30, 2009) (unpublished) ("[P]laintiff details various pieces of evidence which she contends the ALJ misconstrued . . . , however, [she] has not explained how such evidence if fully considered, would have proven additional limitations sufficient to eliminate the possibility that [she] could perform the [class of] work [the ALJ found she could perform].")

## 2. Development of the Record

The next issue concerns whether the ALJ inadequately developed the record by failing to order further medical examinations of Plaintiff. Plaintiff asserts that the limited amount of medical evidence of her impairments for the three to five years prior to her hearing caused the ALJ's conclusion regarding her RFC at the time of that hearing to fail for lack of substantial evidence. Specifically, Plaintiff argues that the ALJ needed to obtain (1) a consultative examination to explore her allegations of back pain and depression, and (2) an updated statement of her RFC.[7]

---

[7] Although Plaintiff characterizes the ALJ's alleged failure to develop the record as a single issue, her specific contentions straddle two steps of the SEP. The question of whether her back pain and depression qualify as severe
(continued...)

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986); see also Kersey v. Astrue, 614 F. Supp. 2d 679, 693-94 (W.D. Va. 2009) ("The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." (citing 20 C.F.R. §§ 404.1513(e), 416.913(e)); France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000) ("[T]he ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim.").

"[T]hat does not mean that 'a remand is warranted any time the claimant alleges that the ALJ has neglected to complete the record.'" Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, at *8 (D. Md. Dec. 14, 2009) (unpublished) (quoting Brown v. Shalala, 44 F.3d 931, 935 n.9 (11th Cir. 1995)). Instead,

> [t]he Fourth Circuit has held that a case should be remanded for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, _and_ such failure is prejudicial to the claimant

---

[7] (...continued)
impairments arises at step two, but the impact of these impairments in combination also involves a step three analysis. Her updated RFC statement, in contrast, arises solely at step three.

-13-

> . . ." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir.
> 1980)(emphasis added). "Prejudice can be established by
> showing that additional evidence would have been produced
> . . . and that the additional evidence might have led to
> a different decision." Ripely v. Chater, 67 F.3d 552,
> 557 n. 22 (5th Cir. 1995). If a plaintiff fails to show
> that he/she was prejudiced by the ALJ's failure to
> develop the record, remand is not warranted.

Zook v. Commissioner of Social Sec., No. 2:09cv109, 2010 WL

1039456, at *4 (E.D. Va. Feb. 25, 2010)(unpublished)(brackets and

ellipses in original); see also Bell v. Chater, 57 F.3d 1065, 1995

WL 347142, at *5 (4th Cir. 1995)(unpublished)(finding no reversible

error where Plaintiff "failed to indicate how . . . unidentified

[medical] reports would have impacted the ALJ's assessment");

Scarberry v. Chater, 52 F.3d 322, 1995 WL 238558, at *4 n.13 (4th

Cir. 1995)(unpublished)(ruling that "ALJ had before him sufficient

facts to determine the central issue of disability" where the

plaintiff's attorney failed to "identify what the missing evidence

would have shown").

In the case of medical evidence, the hearing officer must

develop a plaintiff's complete medical history for at least the

twelve months preceding the month of that plaintiff's application

and assist the plaintiff in obtaining medical reports from her

doctors. 20 C.F.R. § 404.1512(d). Development of the record may

include ordering consultative examinations "when evidence as a

whole, both medical and nonmedical, is not sufficient to support a

decision," 20 C.F.R. § 404.1519a(b). Notably, when assessing a

plaintiff's RFC, such evidence includes "descriptions and

-14-

observations of [the plaintiff's] limitations from [her] impairment(s), including limitations that result from [her] symptoms such as pain, provided by [the plaintiff], [her] family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3).

In the present case, Plaintiff makes no claim that the ALJ failed to develop the record for the twelve months prior to August 2003. Rather, she argues that there was insufficient evidence of her condition at the time of her hearing some three years later. Plaintiff points to Frankl v. Shalala, 47 F.3d 935 (8th Cir. 1995), to support her contention that, "[a]bsent some medical evidence of [her] RFC at the time of the hearing," "the ALJ's conclusion regarding her RFC cannot be said to be supported by substantial evidence." (Docket Entry 17, p. 4.) Plaintiff's reliance on Frankl, however, ignores a pivotal distinction between that case and her own.

In Frankl, medical evidence of the plaintiff's RFC at the time of the hearing was necessary because other evidence reflected significant deterioration of the plaintiff's condition after the time of his application. Compare Frankl, 47 F.3d at 938 (discussing evidence of deterioration of plaintiff's condition) with Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)(ALJ generally not required to develop claimant's medical history for period after filing). Here, in contrast, Plaintiff does not contend that her medical condition deteriorated in the intervening

-15-

years or that an updated assessment of her RFC would include any significant changes. She merely alleges that the existing medical records fail to adequately document her depression and chronic pain. This argument ignores the evidence as a whole, including testimony and other non-medical evidence, which contains no sign that additional examinations would reveal any additional limitations due to these problems.[8]

Moreover, the ALJ's duty to <u>develop</u> the record does not excuse Plaintiff from her burden to <u>produce</u> sufficient evidence of her disability at step three of the SEP. Plaintiff's alleged lack of health insurance does not alter this conclusion in this case. Defendant acknowledges that Plaintiff's health insurance terminated in mid-2000, potentially limiting the extent to which she sought medical care, and, as a result, the volume of medical records in this case. However, Plaintiff submitted her application for benefits in August 2003, and she admits that her workers' compensation insurance paid for related medical treatment until the middle of that year. Medical records regarding Plaintiff's condition thus do exist for the year preceding Plaintiff's application, as required by statute. <u>See</u> 20 C.F.R. § 404.1512(d); <u>Ellison</u>, 355 F.3d at 1276. In short, the ALJ had all of the

---

[8] The ALJ noted, for example, that Plaintiff "has been raising her children as a single parent and attending school on a regular basis," and that her FCE reflects her capability to perform light work. (Tr. 19.) He also referenced Plaintiff's own reported desire to return to work for a salary commensurate with her previous job. (<u>Id.</u>) This evidence fails to support Plaintiff's allegations of debilitating chronic pain and depression.

information necessary for him to fairly assess Plaintiff's impairments and functional capacity. Plaintiff simply failed to produce substantial evidence of disability at her hearing. Similarly, she now has not shown that the ALJ's alleged failure to augment the record in her stead caused her any prejudice.

## 3. Hypothetical Questions

As her third assignment of error, Plaintiff alleges that the VE's testimony fails to provide substantial evidence at step five of the SEP because none of the three hypothetical questions the ALJ posed to the expert accurately reflected Plaintiff's RFC. Specifically, she contends that, "[s]ince the ALJ never posed a hypothetical question that asked the VE to consider the RFC set out in his decision, the jobs the VE listed in response to the actual hypothetical questions the VE was asked may not be considered jobs in the national economy that [Plaintiff] could perform." (Docket Entry 17, p. 7.)

The ALJ's first hypothetical question included the RFC as set out by Dr. Mason, and asked whether jobs existed in the national economy for a person of Plaintiff's age, education, work experience, and RFC. (Tr. 311-12.) From this information, the VE opined that Plaintiff could work as an office helper, cashier, or parking lot attendant. (Tr. 312-13.) Plaintiff challenges both the hypothetical and the conclusions drawn from it due to minor discrepancies between Dr. Mason's RFC and the one ultimately

-17-

summarized by the ALJ in his decision.[9]  She alleges that the RFC, as posed by the ALJ in his question to the VE, failed to fully encompass Plaintiff's limitations.

To the extent that this claim reiterates Plaintiff's first argument regarding differences between Dr. Mason's report and the ALJ's final summary of Plaintiff's RFC, it fails for the same reasons as her earlier claim.  As discussed above, none of the discrepancies Plaintiff describes render the ALJ's conclusions inconsistent with the substantial evidence in this case.[10]  In fact, the RFC propounded  to the VE in the first hypothetical includes, if anything, a more stringent and specific description of Plaintiff's limitations than the RFC included in the ALJ's decision.  Therefore, nothing indicates that Plaintiff, with lessened restrictions, would be unable to perform the jobs listed in response.  Moreover, Plaintiff's claims as to two additional hypotheticals are inapposite, as the ALJ did not base his decision on the VE's responses to either of those questions.  In sum,

---

[9]  Although Plaintiff suggests that the RFC, as set out by Dr. Mason, also differs from the RFC set out in the ALJ's first hypothetical question, the Court finds no material discrepancies between the two.

[10]  Plaintiff inaccurately contends that the hypothetical failed to include a sit/stand option at all.  The RFC included by the ALJ in the first hypothetical prohibits Plaintiff from standing more than 15 minutes in a one hour period. Although a restriction on standing and a sit/stand option are not completely analogous, the Fourth Circuit has found that such minor discrepancies generally do not constitute reversible error.  "The ALJ has 'great latitude' at step five in posing hypothetical questions to a vocational expert, and the ALJ is free to accept or reject restrictions as long as there is substantial evidence supporting his decision."  Basu-Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at *9 (M.D.N.C. Aug. 8, 2008)(unpublished)(citing Koonce v. Apfel, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999))(internal citations omitted).

-18-

Plaintiff has failed to show any prejudice from the alleged errors and thus no basis for remand exists. See Morgan, 142 Fed. Appx. at 723 & n.6; Farnsworth v. Astrue, 604 F. Supp. 2d 828 (N.D. W. Va. 2009)(applying harmless error analysis to technical errors in RFC-related hypotheticals where such errors do not affect the availability of jobs that accommodate correct limitations).

## 4. Severe Impairments

At the hearing, the ALJ identified only one severe impairment: right hip sprain with femoral neuropathy. (Tr. 18.) Plaintiff now contends that substantial evidence at step two of the SEP also supported categorizing her back pain, obesity, and depression as additional severe impairments. According to SSA practice, an impairment is "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 61 Fed. Reg. 34469. See also 20 C.F.R. § 404.1520(c). Applicable regulations further provide that "basic work activities" include:

>    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

>    (2) Capacities for seeing, hearing, and speaking;

>    (3) Understanding, carrying out, and remembering simple instructions;

>    (4) Use of judgment;

>    (5) Responding appropriately to supervision, co-workers and usual work situations; and

-19-

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

The plaintiff bears the burden of showing severity at the second step of the SEP. See Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant."). Courts generally consider an impairment in any one of the above-quoted areas severe so long as it is not obviously slight, insignificant, or meaningless. See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984). A plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors alone. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or

-20-

psychologists. 20 C.F.R. § 404.1513(a). A claimant's statements regarding the severity of an impairment is not sufficient. <u>Adame v. Apfel</u>, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); <u>Flint v. Sullivan</u>, 743 F. Supp. 777, 782 (D. Kan. 1990).

<u>Rivas v. Barnhart</u>, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006).

Under the above standard, Plaintiff's arguments immediately fail as to two of her three alleged additional impairments. The medical evidence of Plaintiff's back pain and obesity shows, at most, the existence of these conditions. However, Plaintiff has not identified medical evidence showing that these conditions were severe in the sense that they inhibited her capacity to perform basic work activities. She simply alleges that she reported low back pain to her physicians on two occasions and that her height and weight measurements indicate clinical obesity.

Further, Plaintiff fails to connect these conditions to any degree of independent impairment, let alone severe impairment. Regarding low back pain, Plaintiff's own testimony indicates that her back starts hurting when standing because she puts all her weight on her left hip. (Tr. 264.) This admission, along with the consultative physician's assessment that Plaintiff's back pain may be an "associated right femoral neurapraxia symptom[]," (Tr. 185), strongly indicate that Plaintiff's pain was a symptom or complication of her femoral nerve injury and not a separate impairment.

-21-

As for Plaintiff's obesity, nothing in the record, medical evidence or otherwise, indicates that her weight would have an effect on her ability to perform basic work activities. <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 504 (7th Cir. 2004)(no remand required where plaintiff failed to show, through objective evidence, how his obesity further impaired his ability to work); <u>Miller v. Astrue</u>, No. 2:06-000879, 2008 WL 759083, at *3 (S.D. W. Va. Mar. 19, 2008)(same); <u>Ross v. Astrue</u>, No. 1:05CV968, 2008 WL 205213, at *5 (M.D.N.C. January 23, 2008)(physician's reference to plaintiff's height and weight, without further discussion, supported ALJ's conclusion that obesity did not limit her ability to work). In fact, Plaintiff's treating orthopedist, who was well aware of Plaintiff's weight, still opined that she retained the capacity for light work. Substantial evidence therefore supported the ALJ's decision to identify only Plaintiff's hip injury as a severe impairment. <u>See Skarbek</u>, 309 F.3d at 504 ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [plaintiff's] obesity. Thus, although the ALJ did not explicitly consider [his] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.")

Plaintiff's alleged depression presents a somewhat closer question. The ALJ's decision states that Plaintiff has not been treated for depression. Although Plaintiff never sought treatment from a mental health care provider, she was, at some point prior to

-22-

her hip injury, diagnosed with depression and prescribed medication for the condition.[11] However, as was the case with Plaintiff's back pain and obesity, a mere showing that she had an impairment does not suffice. She also must demonstrate the severity of any such impairment during the time she alleges disability, 20 C.F.R. § 404.1512(c), and she must do so using medical evidence, Williamson, 350 F.3d at 1100.

Plaintiff fails to meet this burden. Her mother testified at the hearing that depression adversely affects her daughter's social life, housework, and personal hygiene (Tr. 295-300), but no medical evidence supports these assertions or in any way suggests that any depression experienced by Plaintiff had more than a minimal impact on her ability to perform basic work activities. In light of these findings, the ALJ's conclusion that Plaintiff's depression failed to qualify as a severe impairment was supported by substantial evidence and does not require a remand.[12]

---

[11] Plaintiff incorrectly claims that two of Plaintiff's treating physicians diagnosed her with depression. In fact, the medical records only indicate a positive medical history of depression. Plaintiff herself indicates in her daily activities questionnaire that she was not taking medications for any mental conditions as of November 2003, but that her primary care doctor had previously prescribed "nerve meds" when she was going through divorces. (Tr. 74, 76.) Corroborating this, her Paxil prescription appears to predate her injury and subsequent work stoppage, belying any assertion that Plaintiff's depression alone constitutes a disabling impairment. Plaintiff's more recent prescription for Cymbalta is irrelevant, as it is dated October 2006, a month after the ALJ issued his decision.

[12] In fact, where an ALJ has already determined that a plaintiff suffers from one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error. "According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation."
(continued...)

-23-

## 5. Credibility

Plaintiff next challenges the ALJ's finding at step three of the SEP that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. SSR 96-7p, as applied by the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), provides a two-part test for evaluating a claimant's statement about symptoms.[13]  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)).  In the present case, Plaintiff specifically alleges extreme pain and significantly reduced mobility due to her documented right hip sprain with femoral neuropathy.[14]

---

[12]  (...continued)
Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, ___ F. Supp. 2d ___, ___, 2010 WL 1028003, at *17 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, the ALJ found a severe impairment and proceeded with the SEP. Moreover, as discussed later in this Memorandum Opinion, the ALJ considered all of Plaintiff's limitations (whether classified as severe or not).  Under such circumstances, any alleged improper application of law at step two caused Plaintiff no prejudice.  See id.

[13]  SSR 96-7p, in turn, clarifies credibility assessment as provided for under 20 C.F.R. 404.1529 and 416.929.

[14]  At least one of Plaintiff's physicians opined that Plaintiff's allegations of pain were exaggerated.  (Tr. 168.) The medical records as a whole, however,
(continued...)

-24-

Plaintiff's case thus hinges on the second part of the test, which requires that,

> after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, . . . the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. <u>See</u> 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, <u>see</u> <u>id.</u>; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), <u>see</u> 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, <u>see</u> 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

<u>Id.</u> at 595. In other words, the credibility of Plaintiff's symptom testimony must be weighed in light of the record as a whole.

Here, Plaintiff contends that the ALJ failed to consider all of the evidence in the record before concluding that her statements regarding her pain level were not entirely credible. She specifically challenges the ALJ's conclusion given the extensive evidence of pain, including medical records, testimony, and her documented behavior throughout the application process for benefits. In addition, Plaintiff claims that the ALJ failed to

---

[14] (...continued)
reflect that, during the relevant time period, Plaintiff experienced some degree of pain and weakness related to her condition. The ALJ acknowledged that fact in his decision. (Tr. 19.)

adequately consider her prior work history, which she contends serves to bolster her credibility.

Plaintiff correctly notes that her medical records reveal muscle weakness and nerve damage as well as consistent complaints of significant pain. Her need to change positions frequently is also well documented through testimony, medical and interview records, and her actions during the hearing itself. The issue, however, is not whether Plaintiff's pain exists; it undoubtedly does, and the ALJ so acknowledged. (See Tr. 19.)

Rather, the Court must determine whether the ALJ failed to consider all of the evidence in the record before determining that the extent and limiting effects of that pain were not as great as Plaintiff claimed. Significantly, in evaluating a plaintiff's credibility, the ALJ has the responsibility to draw inferences from, and resolve conflicts in, the record. Smith v. Schweiker, 719 F.2d 723, 725 n.2 (4th Cir. 1984). A plaintiff therefore must show more than a base level of support in the record for her alleged symptom severity in order to demonstrate that the ALJ failed to apply the correct legal standard as to the second part of the symptom credibility test. More specifically, she must show that the ALJ either ignored crucial portions of the record or that his credibility finding was patently unreasonable given the evidence before him. See, e.g., Farnsworth, 604 F. Supp. 2d at 857 ("'Because hearing officers are in the best position to see and

-26-

hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference.'" (quoting <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1237 (7th Cir. 1997))); <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984)(same); <u>Basu-Dugan v. Astrue</u>, No. 1:06CV00007, 2008 WL 3413296, at *6 (M.D.N.C. Aug. 8, 2008)(unpublished)(holding that credibility "determinations will be upheld as long as there is some support in the record for the ALJ's position and it is not patently wrong").

In this case, the ALJ's decision clearly demonstrates that he considered all of the medical and testimonial evidence Plaintiff claims he ignored. The decision memorializes Plaintiff's testimony alleging chronic, residual back and hip pain with some numbness in her feet, as well as her inability to sit for long periods and her difficulty in concentrating. (Tr. 19.) It also reflects, per her testimony, that she has good days and bad days. (<u>Id.</u>) These assertions are supported by the testimony of Plaintiff's mother, who stressed Plaintiff's need to change positions frequently, her need for help around the house, and the probability that she would not be a reliable employee. (<u>Id.</u>) While Plaintiff argues that the ALJ "completely ignored" this testimony, the record does not support that claim. As stated above, the ALJ must resolve conflicts in the record, and the decision demonstrates that he did just that in the present case.

-27-

In this regard, against Plaintiff's testimony, the ALJ considered additional evidence, in particular the medical records, that strongly suggests Plaintiff's limitations are not severe enough to prevent her from undertaking gainful employment. In fact, Dr. Mason, the same doctor who noted that Plaintiff has "significant pain" and weakness, also found her capable of a range of light work. All of the other medical reports and tests cited by Plaintiff in her brief suggest the same, as do Plaintiff's daily activities, including parenting, house and yard work, and, at least for some period of time, attending school.

Plaintiff's documented lack of interest in potential jobs similarly undermined her assertions regarding the significance of her prior work history and efforts to work. Specifically, per Plaintiff's job counselor, she refused to consider a job as an office assistant because of the low salary (Tr. 143), and she hesitated to begin any of the job training programs offered because she felt that "none of the programs was going to help her obtain a job earning $22 per hour," as she had before her injury (Tr. 137). As the ALJ noted, the test for disability turns on the claimant's ability to perform substantial gainful activity, not simply activity yielding a salary commensurate with prior employment. (Tr. 19.) Weighing all of the above evidence against the testimony from Plaintiff and her mother, and considering that the relevant materials were cited in the decision itself, the Court finds the

-28-

ALJ's credibility analysis well-grounded in the evidence and articulated sufficiently to provide meaningful review, as required by SSR 96-7p.

## 6. Combination of Impairments

In her sixth assignment of error, Plaintiff essentially extends her earlier claims regarding the severity of her depression, obesity, and back pain. She correctly notes that, even if these impairments, individually, qualified as non-severe, SSR 96-8p required the ALJ to consider limitations and restrictions imposed by all of Plaintiff's conditions in combination at step three of the SEP. Although Plaintiff contends that the ALJ failed to do so, she provides no support for her assertion.

SSR 96-8p requires that an ALJ consider "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Here, the ALJ's decision first recounts the limitations resulting from Plaintiff's depression, including "'mild' limitations in activities of daily living, social functioning and concentration, persistence and pace," and states that those limitations were given significant weight in making Plaintiff's disability determination. (Tr. 18.) The decision also references Plaintiff's back pain and more generalized chronic pain as factors in formulating her RFC. (Tr. 19.) Specifically, the decision notes Plaintiff's allegations of

-29-

"back and hip pain with some numbness in the feet, an inability to sit long[,] and some difficulty concentrating," and concludes that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but perhaps not to the full extent Plaintiff claims. (<u>Id.</u>) Although the decision does not explicitly mention Plaintiff's obesity, as discussed in section four above, nothing in the record indicates that this condition exacerbated Plaintiff's hip sprain or resulted in any additional functional limitations; as a result, the ALJ did not have to address that matter. <u>See</u> <u>Skarbek</u>, 390 F.3d at 504; <u>Ross</u>, 2008 WL 205213, at *5. From these facts, the Court cannot conclude that the ALJ failed to consider all of Plaintiff's impairments to the required extent.

**7. Side Effects**

Finally, Plaintiff asserts that the ALJ failed to properly consider the side effects of Plaintiff's medication. In his decision, the ALJ found that the record did not support the existence of side effects. (Tr. 19.) Plaintiff counters this conclusion with three references in the record to the drowsiness she encountered when taking Neurontin for pain. (Tr. 88, 129, 176.) A review of these citations, however, reveals that any error by the ALJ was harmless. Although Plaintiff did report to her physician, Dr. Park, that drowsiness from Neurontin interfered with some of her daily activities, at the same appointment, Dr. Park

-30-

instructed Plaintiff to discontinue or change the timing of her doses to avoid this problem. (Tr. 129, 176.) In addition, the medical records reveal no reports of drowsiness until Plaintiff had taken Neurontin for over two years, a circumstance which indicates that any problems caused by the medication were minimal.

Evaluating similar facts, another court found that

> there was no medical evidence as to any physical limitations resulting from any side effects from medication. Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations. Here, there is no such evidence. Thus, the ALJ's decision to discount [the claimant's] allegations of side effects was based on substantial evidence.

Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)(cited with approval in Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)). The same conclusion applies in the present case. Neither the record nor Plaintiff's brief addresses how the side effects of her medication created additional functional limitations. Plaintiff thus has failed to show that side effects impacted her RFC.

## CONCLUSION

In sum, the Court finds that substantial evidence supports the Commissioner's findings and that Plaintiff has failed to show that the ALJ applied an incorrect legal standard in any fashion that prejudiced her.

-31-

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for summary judgment (Docket Entry 16) seeking a reversal of the Commissioner's decision be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 19) be **GRANTED**, and that this action be dismissed with prejudice.

            /s/ L. Patrick Auld
            **L. Patrick Auld**
       **United States Magistrate Judge**

June 30, 2010